24-1352, Vancouver S.a.r.l. v. Elliott Management Corporation. This appeal concerns an order issued pursuant to 28 U.S.C. § 1782 where the district court denied the appellants of access to any document discovery and denied... Actually, that's not what the order did, right? The order didn't deny all document discovery. The order said it's going to be denied as to the Elliott advisor entities, but then left open the question of the extent to which it might be awarded against the Elliott funds, right? That is what the text of the order says. However... Well, in fact, is there not a pending application in the district court, even as we speak, by you to interpret that order to give certain discovery? A request was made, but from our position, that does not impact the finality of what the district court did. Well, why not? In other words, if we decide this case against you, you just go back and reactivate that application for the district court, right? That's not what's wrong. Well, the request was a status update letter as to the updated subpoena that was issued pursuant to the court's order. The scope of the court's order was very clear that we were limited to discovery against two shell entities that have no employees and no documents. But it wasn't... Well, I mean, two things. One is, you know, they are parties against whom you sought discovery. The district court did ask for a status update. You sent a status update and proposed subpoenas. And you said the district court should interpret its order to allow discovery against the funds to include documents that were created by its advisors. And the other side doesn't want to interpret it that way. And the district court never resolved that dispute and never decided the extent to which it was ordering discovery against the funds, right? Well, the court's order did not say... The court's order actually said that we were restricted only to the fund entities and denied as to the advisor entities. Right. So that means it, you know, resolved... I mean, in fact, the district court said on the record that it was deciding most of the issues, but that it was open to granting the request as to the Elliot funds. So, like, the district court believes there's an open question to be resolved. You put a question before the district court to be resolved, and instead of waiting for a final resolution, you file an appeal. Well, the district court, I believe, was under the impression that the Elliot funds were more than shell entities, that they had something there and somebody at the wheel. So I think that's right, actually. When the district court is talking on the record, it says, you know, the Elliot funds don't say that there are no documents in New York. They say they have very few, but there might be some. You know, I think there should be limited discovery, but I'm not sure exactly what it should be. So you should be deferring any proposed subpoenas. Right. And then, you know, you think, well, you should reach documents created by the advisors. They say, well, actually, it really is a null set, whatever documents. But, like, your argument is plausible, but that doesn't seem to be what the district court envisioned. I'd actually like to know what the district court decides about that. Maybe the district court will say that's not what I envisioned. Maybe you're right about that, but I don't know, because there still is this pending question before the district court, right? If you look at the district court's order on the fourth intel factor, the district court – the district judge was very clear as to the scope of permissible discovery, and that's the issue before this court today. And so this court does rule on the scope of permissible discovery to say that, well, you can't limit it to shell entities that have nothing. The fourth factor weighs in favor of sharply curtailing the scope of discovery that should be permitted, and through them, meaning the funds. Meaning, like, it might be that you get at other documents through the funds. So that's consistent with what you say. And then the district court also says that L.A. response did not represent that no responsive documents are located in the United States. So I don't know if it's plausible what you say in that case. The district court did envision there'd be some discovery through the funds. So maybe the district court would agree with you about how to interpret the remaining discovery requests, but I don't know because there's still this pending proceedings before the district court, and we don't have a final resolution on that issue. But the district court said limited even more so, to answer your question, Your Honor, is that it has to be – Everything you're making is the district court decided it should be limited, and it still has to work out exactly how limited and what it is. And you've decided, well, I don't want to tear what the district court says because it's all going to be kind of frivolous anyway, so I'm just going to go to appeal. But, I mean, even if you don't like what the district court is going to do, I mean, isn't it just a requirement that we have to wait until there's a final resolution before we entertain an appeal? Well, the practical impact of what the district court's limitations did was they limited to the L.A. fund documents that the funds were a party or a signatory to. That renders it impossible – Or a participant, right? Or a participant. Right. So you, you know, quite plausibly advised us that, well, that should include documents that were prepared by the advisors as the fund's agents. Maybe you're right about that, maybe you're wrong about that. I just don't know. We did make that argument below. We did make that argument below that the district court did deny as to those advisor entities. You can get direct discovery against the advisor entities, but the question about whether you get discovery of documents in the possession of the funds that were created by the advisory entities acting as the agents of the funds, that's an open question before the district court, right? In fact, you put it before the district court. You said, please, district court, you should understand the discovery that way, and you should issue a subpoena against the fund that encompasses those documents. Well, that is the same argument we had made before the court issued its order. So it wasn't a new argument that we raised in light of the need to confer. It was the same argument that had been raised. It was repeated again. So it isn't a new issue. You asked for reconsideration, in effect, or at least for further discovery to be provided that was reasonable based on the interpretation that the court had reached, perhaps under a factual misapprehension that there might be such documents. And you're saying, well, there isn't really, but there might be a way of reaching documents through these entities, and please think about this and give us something. Now, are you here to represent that if we gave a limited remand to the district court, you would disavow that application and withdraw your application for discovery with prejudice against the entity's funds? If the court were to remand based on our other issues, yes, we would disavow. No, no, no, no, no. We don't just resolve any other issues. We don't resolve the issues. In other words, the thing that you're not getting to do is to get one crack at the apple with us and then go back to the district court and revitalize that application. That's what makes it not a final order. Now, if you're telling me that you are prepared to withdraw with prejudice the unresolved claims that are still down there, then maybe you get to come back here. Yes, Your Honor. Yes, you would? We would disavow what's pending before the district court if that hasn't been interpreted and with prejudice. Well, you know, it's not a deal. I'm not saying that we're going to do that or I think we should do that. I'm just asking what you would do in that event. Maybe we can talk about the merits then in the event that we don't do that. Okay, so on the merits then, I mean, so why is this far exceeding in reasonable contemplation? I mean, you have said expressly we don't know what was in the standpoint of West Bronx when and whether we bring an action in the U.K. depends on what we discover, you know, through the American discovery. You know, it's been two years since you sent us your mail letter. You're not bringing a lawsuit. It seems like the whole lawsuit just depends on whether or not you can make a case depending on what you're going to get through discovery here. It seems weird to say that this discovery is an aid in the foreign proceeding when the whole question of whether there is a foreign proceeding or not depends on what you discover here. Yes, Your Honor. So then the pleading standard of the English courts, it's much more onerous than 9B. So the 9B intent, motivation, knowledge can be played generally. Over there, it requires direct evidence. And so because of that higher pleading standard, you actually have to go and get the evidence from the other side somehow, whether it's directly from the other side or through people who you believe work with them. Well, that's true. I mean, suppose that you didn't have the Foreign Selection Clause and you were able to get interstone on the jurisdiction here. What would you plead that would satisfy the frontally standard, let alone Rule 9? So if we were in litigation here on 9B, the allegations would be as follows. Our clients, the appellants, had an interest in Hadi and in Paris they wanted to sell. They feel the initial offers are too low. Westmont came in and said, well, we'll give you a couple million euro more, but we want exclusive negotiating rights. Within about a month, month and a half of obtaining those exclusive rights, they point to some issues they claimed existed and said, well, let's bring it back down to the original number. The issues that they claimed existed was the COVID-19 pandemic? No, Your Honor. What they pointed to were cost overruns. Due diligence issues or whatever. Due diligence issues, cost overruns. But that's the ultimate offer. They're worried about hotel occupancy in light of the COVID-19 pandemic, right? That is the final time that they did request a reduction. But the reduction efforts started from the beginning. What you're saying is there was a course of negotiation and maybe they were being honest about what their concerns were. But you're saying, well, maybe they weren't and it was all part of a strategy to lower the price. But you don't have any facts one way or the other, right? In fact, you say in the letter to them, you know, we don't know what their state of mind was. That's why we need to do discovery, right? Isn't that an admission that, you know, you have facts that are consistent with wrongful conduct, but they're equally consistent with non-criminal conduct, and you just don't know one way or the other. After all, the first reduction that happened, you agreed to, right? I mean, not as much as they asked, but there was a negotiation. This is what happens when people do due diligence. They say, hey, we've got a problem here. What about this? Then you negotiate. It seems it had enough merit that you were prepared to agree, the parties agreed on a reduction. Then along comes this, there was some strange stuff happening around, I don't remember what it was, in late 2019 and 2020 affecting the hospitality industry. And that's when everything really dramatically changes. So where do you see, what is the evidence that there was some bad faith that when they said, okay, well, we could go to 55 million euros if you give us a chance to, you know, look at your books and see whether that's really justified, and we'll work it out. Where is the evidence that that was in bad faith, because they had one fairly minor adjustment that you partially agreed to? And then the world dramatically changes. Where is the bad faith that at the time that they entered that agreement, that was a fraud? I mean, what have you got? So the initial exclusive period is for about two months, from October to December. And right about at the time that first term was going to expire, they come up and say, well, we have these concerns, and so we want a $2 million reduction, bring it back down to the original number. We say, okay, we'll work with you, thinking that this is going to be the one and done. Instead of 30 days, 30 days passes to about roughly January. They come back again. January of 2020. That's correct, Your Honor. What's happening in Wuhan at that time? What's happening in Milan at that time? I mean, we can take judicial notice of a world historical event, and I'm having a little allows American-style discovery for foreign proceedings where that discovery might not be allowed. I'm just trying to figure out whether there's any reasonable possibility of getting pre-suit discovery in the United States on the facts that you've got here. And that seems to me to go directly to the question of whether it's an abuse of discretion for the district court to say, you know, after all, you did buy into having all these disputes resolved in New Orleans. You did go to Texas to try to get discovery against Westmont, and you lost there. Now you're here with this very indirect roundabout way of trying to get into the Westmont state of mind. And what have you ever had that suggests that this was in bad faith from the get-go? Well, we think that they increased their offer just to get us locked down and to terminate with everybody else. How did you lock down? If this doesn't work out, you could reopen for good. Absent world historical events intervening, at the time that these negotiations were taking place, what is the grave disadvantage to you of spending a couple of months working with people who say, you know, if things work out, if the due diligence happens, you get a good deal? If it doesn't, maybe it doesn't work out, and then you go back to the well. Well, that's the reason why we read the first time around, because we did think that they were acting in good faith. Yeah. And what says they didn't? I just don't see anything that is presently existent, possible, that this was all a big scheme. But I'm not sure what the scheme exactly is, because I'm not sure what benefit they get from them spending these months involved in trying to whittle you down a bit, where you could say, look, get out of here, we're just going back to the market. What is the great scheme here that's disadvantaging you and advantaging them from the get-go? Why would we think that? Well, the pandemic happened. I mean, obviously, it happened. But we're not relying on the pandemic as this reason for knocking us down. It happened in the middle of it. That just was part of what they were going to do anyway. The pandemic gave them the reason to say, well, now we're going to bring it down 20 percent instead of not chipping it away. Well, why would you think they're going to do that anyway? They did it, and they did it under circumstances where it looks to me like a perfectly reasonable thing that everybody who was negotiating about buying hotels would reasonably have come to the same conclusion as of that moment. You're suggesting that this was what they were going to do anyway, that absent the pandemic, by the time you got to January, if everything's hunky-dory in the world, they would still be trying to pull you 20 million euros down or whatever that number was. Why would we think that? Well, the period of negotiations were obviously fairly short, and so the reason why we think that, in hindsight, looking back, is that we rejected the initial offer of 53 million euros. That was Westmont's initial offer. They bump it up to 55. Pretty shortly thereafter, they send one of their consultants out. They flag an issue that we told them is not true because we showed them the actual math, but then their ask down was for the exact amount that they had increased. We don't think that they increased their offer because that was their intention to pursue that offer. It was just to lock us down and to terminate with everybody else and to come back to the original terms that they offered the first time around and got rejected. That's the basis for our belief that that was the intent. Because by locking you down for some period of time, other buyers will lose interest, and then they think they can get it for cheaper. That's the idea? You lose interest. I'm not sure about a price issue, but either way, we wouldn't be having a bidding war. It prevents the bidding war because now we only have one negotiating partner because there was a bidding war prior to that. Why did it prevent the bidding war? Because you had an exclusive negotiating partner for some period of time, but you are deciding whether to accept that person's, that entity's offer against what you think you can get from the market, right? No. The way it worked is that we were only allowed to negotiate with one person and not anybody else. Right. You don't have to accept this, right? In fact, we didn't ultimately accept this. Well, the 55 was the accepted number from our end, and so we weren't going to market that 55 and say, well, after you're done, let's see if somebody else will pay 56, 7, or 60. The 55 was the number that we took and said, we're not going to talk to anybody else. In exchange for keeping the 55 offer on the table, you agreed to an exclusive period, right? That's correct, Your Honor. Look, I don't know. I mean, I kind of don't understand the theory, but maybe it was part of some kind of a scheme to lower the price or to get rid of other buyers or whatever, but it doesn't seem like you have any facts to indicate that, right? So you're saying you can't even get discovery against Westmont in the UK because they have a higher standard for fraud. That sounds like you don't even have a plausible claim under U.S. standards. So, like, why should we say that the foreign proceeding is in reasonable contemplation when it seems like there only will be a foreign proceeding if you get discovery and it turns out you find some email from the alien entities that says, why don't you drag your feet for a while? Maybe we'll get a lower price. But if that email doesn't exist, there's never going to be a foreign proceeding, right? Well, I don't think that's... I think we're looking for the best evidence. Obviously... Okay, a little bit of best evidence. So what's the evidence that's maybe not the best that you have currently? Well, the evidence we have submitted here is the pattern of the correspondence where, you know, given... As you said in your letter to Westmont, you don't know Westmont's state of mind, right? So do you agree that the facts you have currently are just consistent with the possibility that maybe there was a bad faith motive, but it's just as consistent with the possibility that there was a good faith motive, right? The letters I read to Westmont back in 2020, those were written under an English pleading standard view. It wasn't written in view of a 9b standard. And so... Okay, so if you had to apply the 9b standard, what would allow for plausible inference of  Well, if we're going to... Let's say you didn't have the informed selection clause. Let's say you could file a complaint at a U.S. court under 9b. What would the complaint allege? What are the facts that would make it plausible and not merely possible that Westmont was engaged in fraud? Well, the plausible allegation is before we had the exclusive agreement, we were in negotiations with seven or eight parties. And so during the first run, and then we opened it back up for a second run. And, you know, we got, again, about seven or eight offers the second time around. Westmont came in slightly above the others, but then conditioned it upon an exclusive clause. And so, okay, well, since you are slightly above the others, we'll give you the exclusive  So out of the ordinary, the only, you know, the most plausible inference to be drawn from that is that it was part of a fraudulent scheme? Well, there could be other inferences drawn, but I'm not sure at the trading stage that we have to be taking the most plausible inference. Well, at the trading stage, it's possible, but it has to be plausible, right? So are those facts as consistent with a good faith motive as a bad faith motive? Or do you think the better interpretation, the reasonable interpretation is that there's a bad faith motive? I think at the trading stage, even if it's a coin flip, that would go, the tie would go to me. So, you know, even if there is a potential alternative explanation for motive, we are So under the 9B standard, if you just say, well, they came in above the other bids, and then they've wanted an exclusivity negotiation period to do due diligence and stuff, you're saying that would meet the 9B standard for pleading fraud with particularity? Well, because the reason why they What's the fraudulent statement? Well, the fraudulent statement is we want to venture into this and buy the hotel for 55 million euro, when they never intended to pay the 55 million euro. What would be the possible reason to infer that they never intended it, when the only thing that happened was they did due diligence, then they said they had a problem, that problem was evidently significant enough that you were willing to compromise with them about the amount. Why, what in any of that looks any different from a very standard scenario, where we say we're going to do due diligence, they do the due diligence, and in the course of that, problems arise. This is like, it sounds to me, everyday stuff. There's nothing there that says to me this is out of the ordinary, I should be worried that this was a scheme from the beginning. Because in fact, I'm still not sure what it would benefit them, because if you said, oh screw you, you're just, you're messing with us because you're not really serious if you think this is a due diligence problem. So, you're out of here, we'll go back to the well and see what the, reopen the bidding with other companies. And you know what, maybe they would still not bid more than 53 million euros, and maybe even less, because in light of all these facts, they would do the same thing at this point. Why is there a reason to think that this was all somehow a device to do what? Because I don't see how it benefits them to have this exclusive negotiating period and do the due diligence, just in the hope that they can then somehow fake you out into reducing the price again. Why would that work? Well, the due diligence issues that were raised, there were two. One related to accounting for certain staffing costs. They claimed that we had not included. That was not true. We showed them that it wasn't true. And second one related to a payment of loans. And so, they had miscalculated interest rates. We showed them both were untrue, but at that point, we had been about a month and a half in, or roughly about a month in. And so, as a matter of good faith, let's just get this deal done. We met them halfway. So, it wasn't a matter of the legitimacy. Did you at that point think that that was bad faith, as opposed to, I mean, you said, oh, good faith, let's split the difference. Split the difference because it's going to... Why would you think that they were in bed? And just because you were able to persuade them, at least to the extent of backing down and splitting the difference, why would you assume at that point that they were in bad faith? And if you thought they were in bad faith, why don't you just give it up and start again with the other people that previously had made you offers? Well, that's sort of where we stand, because at the time, we didn't know. We only recognized it after the fact. Well, you recognized it when? You recognized it after they really do want to reduce the price by a lot because the world has changed. That's when you now think, we've got to go back and see if we can somehow salvage this deal on pre-COVID terms. I think that's a fair interpretation of it. That's not the way we see it, Your Honor. We see it as that they saw the opportunity to accomplish what they intended to accomplish from the beginning. But I understand, Your Honor, that's a fair interpretation as well. But that's just not how you see it. Can I just ask about the intel factors? So the counterparty in the hypothetical proceeding in the UK would be Westmont, right? Well, the counterparty in the transaction was the special purpose vehicle in which Westmont and the Elliott fund vehicles were co-investors. That would have been the ultimate owner of the hotel. So who would be the defendants in the hypothetical English proceeding? So it would just be Westmont because it's not yet. Fine. So Westmont would be a party to that proceeding. And the documents you're trying to get from the Elliott entities are communications with Westmont, right? That's part of it, but that is not the full boat of what we're asking for. We're asking for knowledge of the Elliott entities. And so that's really the focus of what our discovery seeks. If it does include communications between Westmont, then that is part of it as well. But the focus is going to be... I mean, if the Elliott entities had some intention that they never communicated to Westmont, it wouldn't be appropriate of them to start a proceeding, right? So hopefully you do need the communications to Westmont, right? Well, it could be a communication to Westmont or it could be a communication internally within Elliott about conversations... It could be a communication to control Westmont. Oh, I see. Yeah, conversations or memos or... But you haven't sought discovery against Westmont in England, right? Excuse me? You haven't sought discovery against Westmont in England, right? That's correct, Your Honor. You sought it in Texas, but you didn't get it there either. That's correct, Your Honor. Okay. So the reason why is because you probably can't get it against Westmont in England, right? That's not my... My understanding for English law is it's sort of the cart before the horse. It's that even if you're seeking that pre-action discovery against the party, it still does require some higher burden of motive and intent type of evidence. The proof-gathering rules in England are more... wouldn't allow you to get this kind of discovery against Westmont, right? It's more of a pleading burden issue than it is a proof-gathering issue. Yeah, but isn't that exactly that cart before the horse thing, exactly what Tormbley and Iqbal accomplished in the United States? I mean, what you would be doing here, it sounds to me, is the same thing you'd be doing in England, which is looking for pre-suit discovery. Because we say very often when we look at a complaint these days, maybe not true before Tormbley, we look at the complaint and say, well, you can't get discovery in order to bolster your claim up to the point where it's really plausible if you don't really have any actual evidence of this now that would enable us to think this is a real case, you're not going to get discovery here either. I mean, it's a pre-suit discovery that you're asking for. And if we were more liberal about that, or if their pleading standards were somehow unreasonable or radically different from ours or whatever, maybe that would be one thing. But I certainly see this as a case where American-style discovery would be available. You know, because you haven't, it seems to me, got it, but we're starting back over the same ground again. You want to move on to the intel factors. The intel factors, by the way, are non-exclusive, right? That's correct, Your Honor. I mean, would it be fair to say that under English law, like the sort of English policy reflected in their law, and they don't think you should be able to bring a fraud suit given the state of evidence that you have at this time, right? Well, the English courts have come out both ways. There is a pleading standard that's higher, but the English courts have also said that any party who appears before the English courts can use any lawful means in the country where they seek discovery, regardless if it's permissible or not. They would ignore the evidence that you get through the United States or any other country, I guess, but I'm just thinking about England itself, right? The way their legal system works is given the amount of evidence you have now, you would not be able to bring a claim or even get discovery. I don't think that it's an open-and-shut case. I think that what we've decided to do is to seek discovery here from the people who we believe have knowledge of the transaction, and you pursued them in Westmont in Texas, that is correct, and then we came here afterwards, that's also correct. Well, then why haven't you pursued Westmont in the UK, or LAUK, which is located in the UK? Well, LAUK, it's unclear whether the English courts have jurisdiction because... Why haven't you pursued Westmont in the UK? Well, because we're pursuing a discovery here. We're trying to play out this trail, get the evidence here. But why? Why does it logically make sense to first look at a third party before the actual counterparty? Well, I think that getting discovery from the co-investor, the expectation is that they'll be more cooperative since you've already put on the record and made various representations of the non-target, as opposed to going directly against the target. That's really part of the calculation here. Well, they need to be cooperative if you're going to get a subpoena. Right, right. That's why we're here. We'll get to the documents, but we did already request... Well, we did ask, before any of these proceedings started, we did issue correspondence, intercourse, English procedures for pre-action discovery from Westmont. And so that's sort of the way they do it over there. I'm trying to remember back to... Yeah, the Texas District Court... The form selection clause is not dispositive, but we generally honor form selection clauses. And so if you and a party peer have agreed to proceed under U.K. law, and if under U.K. law the subpoena is you should not be able to bring a claim or to get discovery given the current state of the evidence, doesn't it seem like getting evidence in the U.S. in order to initiate a proceeding in the U.K. would not be given in the spirit of comedy with a foreign proceeding, but would undermine the way the U.K. wants to operate its courts? Well, just real quick on the Texas courts. I recall now, the Texas courts, they were basing it off of the question of whether it's jurisdiction to be able to provide discovery. So it wasn't a determination because we couldn't get it. With regard to the form selection clause, the problem with interpreting the form selection clause as a factor against 17 to discovery for English litigants is that every other English litigant gets it or has the opportunity to make the request. If we carve out an exception that every... It doesn't have to be a carve-out exception, because we've said that all of these cases depend on the circumstances and it's very fact-intensive. So you might have a case where you have an ongoing proceeding in the U.K. and there's some evidence in the U.S. that the U.K. court just can't reach. In that kind of a case, if you do discovery in the U.S., you're helping the foreign proceeding and so on. But in these circumstances, the parties have agreed that they want to proceed under U.K. law, so it should be governed by U.K. law. But you can't make out a claim under U.K. law, and U.K. law doesn't even think that discovery is justified under these circumstances. And so now you want to use the American mechanism, which is supposed to support the U.K. procedures in order to expand their scope or alter what the default rules are. So I'm not saying, like, as a general rule, if you have a Foreign Protection Clause, you should never be able to use American discovery proceedings. But actually, the Supreme Court doesn't say that. The Supreme Court just said it's part of the factors that I consider in circumstances. Under these circumstances, it seems like you are not using it to help an existing foreign proceeding. You're using it to get around the Foreign Protection Clause and the restrictive discovery rules of the U.K. law. We're not trying to get around the Foreign Protection Clause, because we completely acknowledge that this is a U.K. litigation ultimately between us and Westmont. That part, we agreed to. We did start the process with the pre-action letters, and once they were not going to cooperate, then we decided to bring the 1782 proceedings first in Texas and now here. Ultimately, this matter will get resolved. I have a question. If you don't get discovery in the U.S. through this mechanism, what will happen in the U.K.? Will you bring suit? Yes, so I'm not in charge of that part of the litigation myself, but then my understanding is that we're still investigating over there. So the claim is still planned to be brought, but then before we bring the suit, because once you bring the suit, you bring the suit. You don't know, right? You don't know whether it will be brought. My understanding is it will be brought. I don't have the timing for you right now, just because we're waiting for this proceeding to conclude and hopefully get some discovery and then further support what the folks over there are doing. So the action is still proceeding. It's just we're waiting for this proceeding to wrap up first. Okay. Well, we're here for you again on rebuttal, but let's turn to the affidavit. Mr. Tice. Thank you, Your Honor. May it please the Court. James Tice on behalf of the Elliott Respondents. I'll begin with jurisdiction. I think the Court raised the exact issue that we are concerned with, which is that if we were to prevail on this appeal, the case would be remanded back to the district court and petitioners would make, essentially renew, their reconsideration request below and ask the district court to provide additional discovery through the Elliott funds, for example, to their agents. That's what we're worried about and why we raised this jurisdictional issue. My friend would agree. The issue is that the Elliott funds are just shell entities, and so any subpoena against them is going to be a null set of documents, right? That's not exactly true, Your Honor. The way that the business is structured is that there are these two funds, which are essentially pools of money. They operate through advisors on the onshore side, the U.S. side. It's through the EIM and ECM entities. In Europe, it's through the EUK entity. So they operate through those advisors. If this project had come to fruition, the Elliott funds would have contributed funds as recommended by Elliott UK. There would have been lots of documents and so on that are in the possession of the funds. There would have been? There would have been because they would have made transfers. I think there would have been documents such as exactly fund transfers that are signed by an attorney-in-fact on behalf of the Elliott funds, dispersing those funds. But currently there are, I mean, I guess you say, you know, the funds acted as a direction of the advisors, right? Correct. So there probably are documents that are in the possession of the funds in some sense because they were direction to the funds that were generated by the advisors, right? We don't view it that way, Your Honor. We explain the structure to the district court that essentially there's these two U.S.-based advisors that petitioners sued. So they just act as a direction. Like there's no communication because there's no other people to your position. That's right. The funds don't actually have employees writing them. The district court didn't seem to think that it wasn't the null set in the possession of the funds. It was unclear, Your Honor. We thought, I thought we adequately described the structure to the judge and said we don't think there's any documents. To the extent there's documents, there will be very few. All the documents that are relevant. To the extent that there would be very few? Excuse me? You said to the extent that there would be very few, but what would the few? Because the way you just described it, there wouldn't be any. So what would the few be? The sort of document I just mentioned. Like if there had been a funding commitment, there would have been documents signed by But that never happened. It never happened. So that's what I told the judge below. I don't think there are any documents. Were you told the judge below in connection with the original papers of the motion or what was now being presented to the district court after the sort of meet and confer and see what the new subpoenas should look like? As part of the original motion, Your Honor, the judge asked about these issues specifically. We explained the structure. The judge then issued his order. In a follow-up, in the status report that you mentioned, petitioners took one view and said you must have meant documents to agents. We said no, we don't interpret it that way. We think it's more narrow. Rather than resolving that issue, as Your Honor mentioned. Actually, both of those arguments seem plausible, right? It does seem that the district court envisioned that it was not going to order discovery over a null set of documents. So maybe the appellants are right about that interpretation. On the other hand, you did explain that it was very limited activities of the funds. So maybe there just aren't documents. We don't know the answer to that question. We don't know the answer to that question. And I would say that, Your Honor, below in the status report, the other side, the petitioners said themselves that this is the key dispute between the parties. It was an unresolved issue in our view. Again, we took a position that we thought the judge knew exactly what he was doing. They did not. But again, rather than wait for the court, they went ahead and filed the appeal. And I think my friend on the other side just said that they would now disavow with prejudice that argument. That would allay our concerns. Again, that's the problem that we see in the lack of finality below, which is that we don't want to win here and then go back and have to do this all over again, with the judge saying, no, I did mean additional documents. So would you agree that the jurisdictional problem could be solved by their agreeing to withdraw with prejudice any application for discovery from the funds? Yes, Your Honor. I think in that case, there actually would be nothing for the district court to do on remand other than just enter judgment in our favor. Remand from the later order that dismisses the claims against funds. The current order that's being appealed from does not resolve the claims against the funds. The current order that being appealed from, in their view, denies all discovery. If they want to But it denies all discovery based on a qualitative argument that what's left open is not meaningful, but it does not actually dismiss the claim for discovery against the funds. That's right, Your Honor, and that's why we raised this argument. I guess what I'm telling you now is to the extent that jurisdiction does have a sort of practical element of it, if they were willing to stipulate or disavow with prejudice the argument that they think the discovery order can be read more broadly, then that would allay our concerns and allow the court, I think, to reach the other issues. To the extent there's concern about that, I think a limited remand would accomplish the same thing, send it back to the district court, essentially to enter judgment with prejudice. And presumably the judgment would be, well, I guess it depends. It seems to me that if the representation is being made that all that's going to happen on remand is they will withdraw the application as against those two entities as to which they will remain open issues. I don't know. I think we have some contradictory practices here. Sometimes we just say, well, that'll settle it if they agree to that before this court, and that's what they mean to do. And other courts have said, well, we give what we call a Jacobson remand, send it back, enter that stipulation, do that all within 30 days, and you can just bring it back to us by letter and we'll be right where we are now. Exactly, Your Honor. I think that would also solve the problem if there's any concern about that. I guess our overarching concern is that this matter has been dragging on for five months. I understand all of that. You'd like to get the answer without undue delay. Right. We have something that at most would set a time limit, send it back to the district court on their representation that they're going to stipulate to withdraw any remaining claims against the funds. Then you get to come back here, and you wouldn't have to come back here and argue again because we're going to have the argument, and we'll go back to this panel, and we'll take up where we left off. That's right, Your Honor. I think that would be a good solution. Well, maybe eventually you feel about jurisdiction. There has not been a final judgment from the district court. So this appeal is from an interlocutory order of the district court. Again, and that's why we raised the point, Your Honor. We were frustrated by it because we want this matter to be resolved as quickly as possible. Okay. All right. So let's talk about the other issues. Sure. So the district court thinks that here the lawsuit is in reasonable contemplation because they've hired an English attorney, and they have a theory, and they sent a demand letter. So why doesn't that mean that there is a foreign proceeding in reasonable contemplation? We think the thread from this court's cases is that Section 782 may not be used to obtain evidence to determine whether or not a claim existed, quote, depending on what the evidence shows. Those are quotations from Mangarest. We view it as sort of an anti-phishing expedition rule. If you have enough evidence to bring a claim but want additional evidence, need additional evidence to help bolster something, you know, you can imagine a lot of factual circumstances where that would be okay. But what you can't do is to say, we don't know whether we have a claim or not, so we're going to use the liberal Section 1782 U.S. discovery mechanism to seek pre-suit exploratory discovery to find out whether we have a claim in the first place. But the idea is that you're not acting in aid of a foreign proceeding if the existence of the foreign proceeding depends on what you discover through 1782. That's right, Your Honor, and we think it's a pure... I'm sure the foreign proceeding doesn't depend on that because I just asked Mr. Kim, like, will the foreign proceeding happen even if you don't get discovery here? And he could have given what, but it seemed to be the bottom line was he thought that it would. Well, let me point you to a few things that petitioners have said in this case. I'm pointing in particular to 826, it's the levy declaration of their European attorney, and here's a few choice quotes. Shareholders presently have, quote, an insufficient evidential basis for pleading such a case. That is because the shareholders currently lack direct evidence of Westmont's state of mind. Skipping forward a little bit, evidence of Westmont's conduct in the negotiations, quote, are not on their own a sufficient basis from which to plead fraud by inference. On page 824, shareholders suspect that Westmont had a fraudulent state of mind, but, quote, lack sufficient material to plead such a case. A127, this is their lawyer letter I think Your Honor referred to a couple times. A what? A127. This is one of the letters that they've said where they threatened pre-action discovery but never filed it. They said the lawyers are looking to, quote, assess whether their concerns are well founded. I think those, I think petitioners could stand up today and say that they're still looking for evidence, and it's true, maybe like manna from heaven they'll find something and file suit soon, but I think the question before the court is, is the suit within reasonable contemplation? Again, I think it's a pure legal question before you, which is when they say we don't have evidence to bring that claim right now, is that claim reasonable? So if it were possible, I guess I have two questions. So what if they were express about saying, well, we have enough evidence, but it would be stronger if we get additional support, then you're saying it would be reasonable contemplation. And I guess two is what would we do if we weren't sure about this? Well, I think that first, I think for both those questions it's a tougher case, and you can imagine circumstances like that, and I think in fact this court has struggled with those questions in cases like certain funds, the KPMG, for example, in Mangareth. I think in those cases the parties affirmatively said we can bring a suit, but let the court decide. There's also Meese. There's Meese as well, Your Honor. And that was a case where the representation, at least as I recall it, was made that they couldn't bring the suit in the Netherlands on the current state of play. On the other hand, they were also likely to bring the suit somewhere. It was, you know, they wanted to go to the Netherlands, but it seemed clear they could have brought that suit in the United States. I think that's right, Your Honor, although I would like to find my notes for that case because I think Meese actually involved the inverse situation where they said we do have enough evidence, and they were saying we want extra evidence to bolster our case. And I would point you to two footnotes in particular in that case, footnote 11 and footnote 13 of Meese. Each of them say this is not a reasonable contemplation case. In fact, the fact that they might have enough evidence, I think this is what footnote 11 says, the fact that they say they have enough evidence might suggest that the case is within reasonable contemplation, but no one has raised that issue, so we don't need to resolve it. And then you go, of course, to the discretionary factors, and the discretionary factors are not the intel factors, although for some reason district judges don't seem to get this. I don't know why. They are non-exclusive, and it seems to me it would be a perfectly good exercise of discretion for a district court to take account of just how likely the lawsuit is and just how difficult it might seem to make a claim, even here in the United States, as part of the exercise of discretion. Of course, the district judge didn't do that. The district judge relied on other weighings of the intel factors. That's right, Your Honor. I think the magistrate judge did do that to some extent, that this goes into the reasonable contemplation question because it seems more like a fishing expedition if you're admitting before the court. Again, this is an easy case where you're admitting you don't have enough evidence. There's going to be tougher ones. It seems like... You said that there's a source factor, right? So you're saying it's overly burdensome. It's like you're not really pursuing the counterparty, but you're going after these other parties before you even address the counterparty and don't know whether you're going to break the suit. That's right, Your Honor. I think after going through Factor 3 and Factor 4, then the district court also takes some time to balance the factors and make that point, Your Honor, and make some additional helpful points as well, I think, including the fact that ultimately I think what this court was most concerned with is this is not a typical use of Section 1782 where a party is seeking evidence that it's in the possession of a U.S. party for aid in a foreign proceeding. They're seeking evidence in the U.K. from the U.S. for purposes of a U.K. proceeding, which is just not a typical use, and I think that's really what underlies most of what the district court's concerns were. So if we can add the concern, where does that fit in? Is that part of reasonable contemplation? Is it the first intel factor? Because, like, the de facto party is the U.K. party? Is it the third clause because you're undermining the proof-gathering rules of the other proceeding? Where does this fit? I would say yes and to that, Your Honor. So I think it's Factor 1. I think it's Factor 3. It's Factor 4. Because Factor 3 goes to circumvention, of course, too, and the idea that you're using this U.S. procedure to seek U.K. documents kind of seems like you're circumventing it, particularly when you have a forum selection clause. But it goes to Factor 4. Particularly when you're having a forum selection clause. So if it's about circumvention of the following jurisdictions' proceedings, why does the forum selection clause matter? Well, I think in this case for a few reasons, Your Honor. Number one, they entered into a forum selection clause with Westmont. It was broadly worded. It's in any dispute. And what the Southern District of Texas held and what we've argued all along is that that would encompass discovery disputes, too. Any dispute arising out of or relating to, which in our view, would encompass a question of whether you can get discovery. So just from the get-go, you have a situation where they're trying to get around what their commitment was to Westmont by seeking documents from other people elsewhere. But I think it's important to look at that factor. Yes, although if this were the classic case that you described, where there is an ongoing proceeding in the U.K., perhaps it's there because of the forum selection clause, but there's some evidence located in the U.S., you wouldn't say it was a violation of the forum selection clause to use this mechanism to get the evidence from the U.S., right? I don't think so, Your Honor. It's about, you know, initiating the lawsuit based on this extra evidence. And I'm not really sure why that's a violation of the forum selection clause exactly. Well, I think you have to look at it. I mean, I kind of, I'm intuitive. I mean, whatever. I would like you to explain. Well, I do think you have to look at it altogether, Your Honor. I think it's a combination of the forum selection clause plus petitioner's admission that they could not get evidence in the forum where they exclusively agreed to litigate. So it's really those two things together is what was driving the District Court's opinion. And then Section 3 is not just about circumvention of proof-gathering limitations. It's also about policies of the forum state and the foreign state. And I guess we do have a policy of honoring forum selection clauses. So if we think that this violates the forum selection clause, maybe that also is a hook for why it's part of Factor 3. But what about the argument that the U.K. is happy to get evidence, you know, gathered through this mechanism so that it's not a violation of the foreign jurisdiction's policies? Well, I think that's why the District Court was so careful to emphasize that this was not dispositive. This was one factor they were looking at. It did not say that this was some bar or created a two-tiered system. It just said in the specific context of this case where U.K. evidence, U.K. parties, exclusive jurisdiction clause in U.K. are going to the U.S. to try to get from U.S. custodians documents they might have access to in the U.K. In that sort of circumstance, all these things together, the fact that U.K. restricts this sort of pre-suit discovery as a general matter, the fact that there was this forum selection clause, and again the location of the documents all sort of work together. Yeah, this is why one of the problems with trying to shoehorn this back into reasonable contemplation is that's a question of law. And when you start making these kinds of decisions at that level, then you're inviting a lot more litigation and a lot more appeals. When you're talking about the fact that this is also something that factors into a very broad discretion on the part of the District Court, we may not need to reach the reasonable contemplation issue because all of these factors go together. And what seems particularly strange about this one is you have a case where the legal theory sounds as if it would be difficult to bring such a case even in the United States and get discovery by bringing some kind of bare-bones claim and hoping for the best, where the information that's being sought is actually in the UK. It's not, apparently, in the United States in the first place, where there is a forum selection clause that is not just a case of, well, you might have trouble getting in for some jurisdiction in one place or another and there are different reasons you tactically want to bring it here or there, but we have already agreed to go there to bring the lawsuit. You take all in all. And it's hard to say, for me, that this was some kind of abuse of discretion by the District Court or to pick at, oh, you put this under factor three when maybe it's an extraneous factor or maybe it should go under factor four. Is this a case where the District Court was way out of line to say, I'm just not going to do this. At least I'm not going to do it against the UK entities of Elliot. I'm just going to do it against these people in the U.S., which maybe turns out to be a dry hole anyway. That's absolutely right, Your Honor. I think at the end of the day it was a reasonable decision. The Court looked at all this carefully and said, I'll let you go after evidence that was actually U.S. evidence. I mean, to be clear, I don't want to misrepresent, the documents are acceptable in the U.S. I mean, there wasn't a claim against Elliot UK, but there's differences between the advisors and the funds, and they're all in New York, right? Right. All the defendants in this case are in New York. The party that was actually directly involved was in the UK. But isn't there already significant evidence in the UK? I mean, I get that communication between Elliot and Westmont would be in the UK, but they also want to oppose Elliot officers, you know, and they're located in New York and they might have, since they were the advisors and they allege they control some of the decision-making, that's evidence that's in the U.S. Well, Your Honor, I think what the District Court found was that the record was undisputed that the documents they were seeking were all UK documents. The documents were, but you know, you might get testimonies. Well, they asked for custodians. They didn't ask for just general testimony of Elliot executives. They asked for the custodians, and we would have had to produce a UK custodian because that's where the documents were created. Again, they were accessible from the U.S., but I think this all goes into why this was such a careful discretionary and certainly an abusive discretionary decision by the District Court. He took all that into account, and he said, okay, if to the extent there are actual U.S. documents, go after them. If they're UK, then I'm not going to allow that as part of this procedure. And, I mean, a document that's a communication between, you know, a New York entity and a UK entity would be both a UK document and a New York document, but you're saying it's reasonable to say to the extent it's a UK document, ordering discovery of a back door from New York would undermine UK law, and so I'm not going to allow that. That's right. It's not a U.S. document, but there is an equivalent UK document, and so you should get that through UK law. We stipulated in the hearing, Your Honor, before the status report, that to the extent there were communications between U.S. and UK documents, we were going to withhold them on that basis. But the idea was if they're really just communications between Elliot UK and Westmont, Elliot EIM and ETM and the two funds should not have to be producing those documents just because they share an IT server. Your Honor? If I'm not totally comfortable with just sort of saying, well, factors are not exclusive, I'm just going to sort of look at everything together, if I wanted to be more precise about it, is there a problem with saying that the third factor depends on whether the UK courts would accept evidence from a 1782 process? Because isn't that what the second factor is supposed to get at, whether the courts would welcome the evidence? I think some courts have noted a bit of a tension between those two, but the way, again, we look at it is that it's part of a discretionary balancing. One question is, does the foreign court accept the evidence? That's number two. But the separate question is, are you trying to circumvent something that you agreed to or restriction of that court? That's a far separate question. Right? Those are inequitably distinct. Right. But if you interpret the second one about circumvention of food gathering rules just to be resolved if the foreign jurisdiction won't accept the evidence, then you collapse the two. So to make it meaningful, you have to think about it in a different way. I think that's right, Your Honor. I point you to the Keogh case, the 2018 Second Circuit decision. In that one, I think it's quite similar to what happened here, where the Dutch attorney said, we can't get those documents. In fact, footnote three of that case said the attorney admitted, it is hardly possible for a party to obtain evidence from another party pre-trial in the Netherlands. That was admitted. So this court said it was not a use of discretion for the district court to find that that was a factor that weighed against the allowing discovery, because you're trying to circumvent the U.S. procedure.  I get that argument. But what about the case in which we said we should understand proof-gathering restrictions as prohibitions on getting the evidence as opposed to a lack of procedures for facilitating evidence gathering? Yeah. I just think if it was a case, and I think there are tougher cases, if it's purely a case where it's just there's not a way of doing this versus the situation here where it's admitted that the foreign court would be unlikely to allow them to get this discovery, they'd acknowledge there is a procedure for it, but that procedure has limitations on it. There wouldn't be much use for Section 1782 if the rule were that it's evading foreign protective requirements whenever discovery in another country is less broad than what you could get in the United States, because generally speaking, you'd be hard-pressed to find a place where the discovery you could get would be as broad as you could get in the United States. So it can't just be that they don't allow much discovery over there, so you're evading that by coming and asking for discovery here. That's right. So that's one problem with that broad interpretation, which I don't think is your argument. It's not, Your Honor. And I think that's, again, why the district court was so careful about this and did not look at the Foreign Selection Clause in isolation. It looked at the Foreign Selection Clause in conjunction with other factors, notably, again, the idea that they had admitted that they could not get that same evidence in the place where they had exclusively agreed to litigate. And in that respect, I think it's exactly what Judge Engelmeyer did last year in the INRE, DNG, FZE case. He wrote, Although a foreign country did not appear to prohibit outrightly discovery of this kind, it imposes a standard governing when such discovery is permitted. And he said then, Accordingly, the use of Section 1782, which does not embed an analogous standard, is fairly seen as an end run around the procedure. And he said that's especially fair because in both parties to the foreign litigation are sophisticated entities who agree to a Foreign Selection Clause. The Foreign Selection Clause makes a difference in this. Exactly. I think that's why the district court read them together and he very explicitly said, I'm going to do this for two reasons judged collectively. I think that's the key. And why is the consideration of the Foreign Selection Clause, is it part of Factor 3 or is it kind of background? Since they're not exclusive, it's a kind of background thing that, you know, kind of alters the analysis. The way the district court treated it and the way many courts have treated it, and I think we cite pages. It's part of Factor 3. Pages 31 to 35 are a number of cases that rely on these Foreign Selection Clauses. Typically done through Factor 3, but Your Honor, you know, to Judge Lynch's point, I don't see any reason why this can't be. I think you know that there's a certain mention because you've agreed to some procedure, but like if you haven't agreed to any particular procedure, then maybe you're not. But I guess you always have to identify a foreign proceeding, so there always will be. There always will be. So I think it's an eminently reasonable decision. You can certainly affirm on that. We'd urge you to do so. I will make one small pitch for the reasonable compensation ruling, which is a pure legal question. We do think that that has the benefit of cutting off any future attempts by this party to sue. There should be just a rule that says if the existence of the foreign proceeding depends on what you may or may not discover through the 1783, 1782 process, then it's not a reasonable contemplation. Is that the idea?  Nothing ever cuts off litigation, no matter what the rule is. No one will have a creative way of getting around it because that's the rule. So it sounds like how do we know whether it will be brought or won't be brought? If they say so, we think we have enough evidence. Are we then going to be plunged into discussing Dutch or English or Kenyan or Uzbek law as to what kind of pleading is required and whether that's really reasonable? They're going to come in and say, well, we're going to bring it anyway, but we really would like to go in with guns blazing and the best way to do that is to get more evidence. That is a totally fair point, Your Honor. I will say, though, that at least, but that is actually what is currently the rule because right now that's what parties litigate over. Is this within reasonable enough contemplation every time it's a pre-suit? But I think you could make a bright line rule which would at least get rid of some of these, like these extreme cases, that basically just says you cannot use Section 1782 to seek evidence in order to determine whether or not to bring a lawsuit. And you think we already said that in the Spanish case. You said it in the Spanish case. The District Court interpreted it differently. But we do emphasize the idea that the Spanish proceeding depends on whether or not certain evidence will be uncovered in the American discovery. And the District Court Distinguished Act is that, well, even though you said that here, you had a 14-page document outlining what your legal claims would be if you were to get evidence. Although in the Spanish case, it was clear what the legal theory would be. The allegation was that somebody had testified falsely in a prior proceeding. Right. I mean, I agree it was not as detailed in that case. That's for sure. But the way we read the rule was, the question is, could you have brought the suit or not? They did have a legal theory. It was not as detailed. It was that, again, there was false testimony. But in our view, what the takeaway should be, this is a statute that aids foreign proceedings, for use in foreign proceedings. But it's not a fishing expedition statute. It's not designed that way. With that argument, thank you very much, Mr. Tate. We'll turn back to Mr. Kim.  Thank you, Your Honors. Just a few quick points here. It's that the discussion about the proof-gathering restrictions has, you know, there's been discussion about it, but the District Court did make a finding that there was no evidence of any proof-gathering restrictions that was submitted, and it's not part of the record. And so when the respondents submitted in their brief evidence of proof-gathering restrictions, what they pointed to was their English solicitor's opinion on what he thinks about our case and how he thinks an English judge would rule. That is their evidence, the sum total of their evidence. You're saying that I think that this is a backdoor way of getting at discovery that you can't get in England, right? Something along those lines. But the discovery that we're seeking is not exclusively about communications between Westmont.  But you are, I mean, the primary target is something that will also be in England. Some of it could be. Some of it could be there, but the issue that we have is that the District Court made a finding there's no evidence of proof-gathering restrictions in the record. In briefing, the respondents did not submit any evidence other than their lawyers' words, yet that idea of proof-gathering restrictions was the cornerstone of the District Court's finding on foreign discoverability and on the Foreign Selection Clause. As I said, in the Texas case, you said expressly that you don't think you can get a pre-suit discovery against Westmont, and I think you just said that here also. Do you think that that's not true? Well, that was a juris... In the Texas issue, I went back and looked at the docket. That was a jurisdictional issue. It wasn't necessarily a merits issue. It was a jurisdictional problem at the time, if I'm scoring off a memory here. And with regard to here, I don't believe that the English courts... I don't know how the English courts would rule. I don't know. But you can get pre-suit discovery in the U.K. I don't know the answer. Even if that undermines the Factor 3 analysis, wouldn't that mean that under Factor 4, if you could get it in the U.K., you should go do it in the U.K., as opposed to going after third parties that are located in New York? Well, that's the next point here, is that the working theory right now is that the Elliott entities are separate. There is the Elliott U.K., there's the Elliott funds, and then the Elliott advisors in the U.S. That's sort of a false division. They are one big fund that the executives in New York are the executives in the U.K., are the executives of the other... I'm told you can't honor corporate separateness unless you make a pretty high showing about an alter ego and other kinds of things, but I don't know if you have that. Well, what we have is that... If you avoid having to decide that, why shouldn't a district court conclude the less burdensome and more direct process would be to use these U.K. procedures that you say you think might be available? Well, because the documents are... There's no extra burden, whether it's produced here or produced there. The burden is the same because they share the same database. They have common people that are across the board. I think part of the reason why that... Isn't that what is before the district court in your application, that what the district court misconstrued by saying, you know, we can give discovery against these entities rather than those, your position is they're really all the same thing and judge you thought yourself that this was not going to be a dry hole and now they're going to say, ha-ha, based on your previous order, there isn't anything. So that's where we stand and you're saying if the judge were told all of that and they had to make an explicit decision, it might come out otherwise. I can't argue with that. Well, I guess my last thing I was going to say is just I would be much more comfortable saying the jurisdictional issue can be gotten over one way or another if there were in writing an express determination that we're not going to pursue that anymore and if we need to, we'll go back to the district court and stipulate to the dismissal of any remaining claims against these particular two entities. And if you tell us that's what you're going to do, that's fine, but do you want a couple of days to consult with clients and English counsel and whoever else you need to consult with before saying that you're willing to give that up? Well, sure. We'll consult. I obviously have to get approval from people that are higher pay grade than me. Can you file such a letter by Tuesday? Wednesday, yeah. Why don't we say that you can file such a letter by Tuesday to say that you would agree to dismiss those claims with prejudice and if the appellant wants to respond, why don't you do so by Thursday? At a particular time, 5 p.m.? In the business. In the business, okay. And then with regard to... It could be a joint letter if you agree with them to stipulate to do this. I'll speak with Mr. Tice after the... I can speak with Mr. Tice after the meeting. A joint letter on Tuesday or a letter from you on Tuesday in response to the letter. Just so I have a clear understanding of the scope of what the expectation is because is it that we're withdrawing the relief requested in the letter or is it we're dismissing the funds because... Well, from my perspective, and Judge Lynch can say if he disagrees, it seems like we do not have a final order in this case because you had claims against the Elliott Funds and the district court did not resolve the discovery it was going to order against the funds. That is an open question before the district court, so it does seem like the claims for discovery against the funds need to be resolved in order for there to be a final order. So that would not just be, you know, asking the district court to interpret it one way or the other would be to dismiss the claims against the funds. Right, well, that's slightly different than the relief being requested in the letter because relief requested in the letter is that the funds only act through... There's got to be enough in the left. Understood. We will confer with our client and then Tuesday, either a joint or a separate letter followed up on Wednesday. Okay. Thank you very much, Mr. Jim.  The case is submitted.